IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| DUNN & FENLEY, LLC an Oregon limited liability company dba K DUNN & ASSOCIATES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DANIEL K. DIEDERICH, an individual,<br><br>　　　　__Defendant__; | 06-6243-TC |
| DUNN & FENLEY, LLC an Oregon limited liability company dba K DUNN & ASSOCIATES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>L. SHAWN WONG, an individual dba Eyes of Texas Laser Center,<br><br>　　　　__Defendant__; | 06-6281-TC |

///
///
///
///

DUNN & FENLEY, LLC an Oregon
limited liability company
dba K DUNN & ASSOCIATES,

        Plaintiff,                           09-6095-TC

      v.                               ORDER on Motions to
                                          Dismiss or Transfer Venue

NORTH CAROLINA EYE, EAR,
NOSE & THROAT P.A., an
active North Carolina
Corporation dba
North Carolina Eye, Ear,
Nose & Throat and
Timothy N. Young, M.D.,

        <u>Defendants</u>.

COFFIN, Magistrate Judge:

        Plaintiff Dunn and Fenley LLC (Dunn & Fenley) complains of copyright infringement and breach of contract in the three above captioned suits. The same counsel, Kenneth Davis, represents Plaintiff in the three suits. Likewise, each Defendant has selected Michael Ratoza to defend the suits. Each Defendant has filed a virtually identical motion to dismiss, or, in the alternative, transfer venue. (Case No. 06-6243, doc. 45; Case No. 06-6281, doc. 48; Case No. 09-6095, doc 8.) The response, reply, and sur-reply briefing has also been almost identical. Thus, I resolve all three motions with one order, which shall be filed in each of the three above captioned cases. For the reasons discussed below, I grant the motions to transfer venue and order that each of the above captioned cases be transferred to each Defendants' respective district. Because I am granting the motions to transfer, I am not considering the Defendants' motions to dismiss and intend to leave those motions for resolution by the transferee district.

///

Order 2

## Background

Dunn & Fenley is a Eugene, Oregon based consulting firm that advises individuals and businesses about marketing, promoting, and advertising services. Each of the Defendants entered into a membership and licensing agreement with Plaintiff to use its services. In 2004, Defendant Diederich, an attorney who is located in Kansas, contracted to use Plaintiff's copyrighted materials to advertise his estate planning practice in Kansas. (Case No. 06-6243, doc. 49, p. *14-18) In 1997, Defendant Wong, a eye doctor who lives in Texas, agreed to use Plaintiff's copyrighted materials to promote his LASIK practice in Texas. (Case No. 06-6281, doc. 46, p. *12-15.) Similarly, in 2007, Defendants Young (who is also an eye doctor) and North Carolina Eye Ear Nose and Throat (NCEENT), who are located in North Carolina, contracted to use Plaintiff's copyrighted materials to advertise their LASIK practice in North Carolina. (Case No. 09-6095, doc. 1, p. *11-14.)

Plaintiff contacted each defendant in their respective states to sell its promotional services, and each Defendant entered into a membership and licensing agreement with Plaintiff. The agreements between Plaintiff and the Defendants were month-to-month. Defendants paid Plaintiff a membership and licensing fee between $1,500 and $2,500 per month. The agreements provided, among other things, that the Defendants could only use Plaintiff's copyrighted materials during their membership. Upon termination of the agreement, Defendants were to stop using Plaintiff's materials and return all licensed materials to Plaintiff. The agreement also provided that any dispute arising from the agreement would be heard in Oregon and that Oregon was the proper venue. (Case No. 09-6095, doc. 1, p. *14.; Case No. 06-6281, doc. 46, p. *15; Case No. 06-6243, doc. 49, p. 18.)

The Defendants in the three cases terminated their agreement with Plaintiff. In each of the three above captioned cases, Plaintiff alleges that Defendants continued to use its copyrighted

Order 3

materials for an unspecified period of time after termination of the agreements. Plaintiff seeks to recover breach of contract damages from Defendants, which damages would be the monthly licensing fee multiplied by however many months Plaintiff could prove unauthorized use of its materials. Plaintiff also seeks to recover copyright infringement damages. These damages are far larger than the breach of contract damages and include statutory damages and/or any of Defendants' profits which can be attributed to the alleged copyright infringement. I heard oral argument on the motions to dismiss or, in the alternative, to transfer venue on November 18, 2009. Following the hearing the parties filed supplemental briefing.

## Standards

28 U.S.C. § 1404(a) governs change of venue motions; providing that: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil litigation to another court or division where it might have been brought." A motion to transfer venue should be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff." In re Genentech, Inc., 566 F.3d 1338, 1342 (Fed.Cir. 2009)(citing World-Wide Volkswagon v. Woodson, 444 U.S. 286, 297 (1980); see also, Sparling v. Hoffman Constr. Co., 864 F.2d 635, 639 (9th Cir. 1988)(recognizing that district courts have broad discretion to transfer a case to another venue).

This circuit applies the "public" and "private" factors when considering a § 1404(a) motion to transfer venue. The public factors include: (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on people of a community that has no relation to the controversy; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action; and (5) the

Order 4

avoidance of unnecessary problems in conflicts of law. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). The private factors are: (1) relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses, and cost of obtaining willing witnesses; (3) possibility of viewing subject premises; and (4) all other factors that render trial of a case expeditious and inexpensive. Id. When considering a motion to transfer venue, the court must balance the preference accorded the plaintiff's choice of forum with the burden of litigating in an inconvenient forum. Id. The burden is on the party moving to transfer venue to establish that a transfer will allow a case to proceed more conveniently and better serve the interests of justice. Commodity Futures Trading Comm. v. Savage, 611 F.2d 270, 279 (9th Cir. 1979).

Finally, I note that because a motion to transfer venue does not address the merits of the case but merely changes the forum of an action, it is a non-dispositive matter that is within the province of a magistrate judge's authority. Holmes v. TV-3, Inc., 141 F.R.D. 697, 697 W.D. La.1991) (stating that "[s]ince a Motion to Transfer Venue is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor is it dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this Court."); see also, Paoa v. Marati, et.al., 2007 WL 4563938 (D. Hawai'i, December 28, 2007)(noting that transfer of venue is a non-dispositive matter and the standard of review for the magistrate's findings is clear error).

## Discussion

After carefully considering all the briefing and the arguments presented at the November hearing, I conclude that venue is the central dispute in these three cases. Accordingly, as noted, I do not consider the motions to dismiss or the preemption issues raised in those motions; instead I focus

Order 5

solely on the Defendants' motions to transfer venue.

As I previously observed, Plaintiff's breach of contract claims are the smaller of two claims against Defendants. The measure of damages for Plaintiff's breach of contract claims are the licensing fees–between $1,500 and $2,500, for the months that Defendants allegedly used Plaintiff's materials without a license. Plaintiff's copyright infringement claims, however, are significantly larger. Plaintiff seeks to recover actual damages as well as "all gains, profits, and advantages" Defendants gained by their alleged infringement. Plaintiff seeks to recover all of Defendants' revenue attributable to the alleged infringement. The Copyright Act places most of the burden of proof regarding such revenues on the defendant in an infringement case. 17 U.S.C. § 504(b). A plaintiff "is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of proof attributable to factors other than the copyrighted work." Id. "Any doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff. If the infringing defendant does not meet its burden of proving costs, the gross figure stands as the defendant's profits." Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 514 (9th Cir. 1985)(internal citations omitted). In contrast, the plaintiff bears the burden of establishing damages in a breach of contract action. 23 Williston on Contracts § 63:14 (4th ed.) For the reasons stated below, taking the difference in the breadth of the two claims and in the burdens of proof, it is clear that this case "presents a stark contrast in relevance, convenience, and fairness between [Plaintiff's choice of venue and the venues to which Defendants seek to transfer their respective cases]." In re Nintendo Co., LTD, __F.3rd__; 2009 WL 4842589 *2 (C.A.Fed. Tex. December 17, 2009)(granting Nintendo's petition for a writ of mandamus and ordering the district court to transfer venue to the United States District Court for the District of Washington).

Order 6

## 1. **Private Factors**

All but one of the private factors weighs in favor of transferring these cases to Defendants' respective districts, and the one factor which does not weigh in favor of transfer--the possibility of viewing subject premises, does not apply and will accordingly be given no weight in my section 1404(a) transfer analysis.

I first consider the private-interest factor of ease of access to sources of proof. Decker Coal, 805 F.2d at 843. I find that this is the private-interest factor which weighs most heavily in favor of transfer. At oral argument, Defendants' counsel noted that each Defendants' clients or patients were located in his respective home state and that the testimony of the clients or patients who chose Defendants' for LASIK surgery or estate planning concerning whether that choice was based on the allegedly infringing advertisements or other independent reasons, would be relevant and indeed crucial to the copyright damages claim. Plaintiff's counsel agreed that the testimony of clients and patients could be relevant and admitted that Defendants would be entitled to call all patients or clients in proving that their profits were not attributable to copyrighted advertisements.

Plaintiff's counsel's assertion during oral argument that the most probative evidence in determining copyright damages would be the revenues when Defendants ran the copyrighted advertisements (both licensed and infringing) compared to when Defendants did not run the advertisements is focused on the Plaintiff's burden, not the Defendants, regarding the measure of damages. Moreover, Defendants' bookkeepers and financial records are located in Defendants' home states and this factor thus weighs in favor of transferring venue. Next, Plaintiff asserts that it is entitled to direct damages and indirect damages from clients/patients attributable to the copyrighted advertisements. Direct damages are revenues attributable to a client/patient who came to Defendants

Order 7

after seeing a copyrighted advertisement. Indirect damages are revenues attributable to a client/patient who did not see a copyrighted advertisement, but visited Defendants on the referral of someone who had seen one of the copyrighted advertisements. Thus, the number of potential witnesses to address copyright damages on behalf of the Defendants is as large as the number of clients/patients who engaged the services of Defendants during the period of alleged infringement.

Plaintiff notes in its supplemental briefing that Defendants have not identified any witnesses by name[1]; however, Plaintiff conceded at oral argument that all of Defendants' witnesses relevant to the Copyright damages claims are located in other jurisdictions. Given Plaintiff's intent to seek direct and indirect copyright infringement damages, it is certain that Defendants would need to call multiple witnesses from their respective districts to defend the copyright claims. Indeed, testimony from these witnesses will be crucial in determining Defendants' revenues attributable to the alleged infringement, and it is imperative that Defendants have access to these witnesses for their defense of the copyright claims.

Plaintiff apparently plans to call five people formerly employed by Plaintiff to testify about the increased business Defendants enjoyed as a result of Plaintiff's materials. (Doc. 60, p. 9.) The potential witnesses serviced Defendants' accounts while working for Plaintiff. Plaintiff anticipates one witness in the Young case; two witnesses in the Wong case; and three witnesses in the Diederich case. Plaintiff cites firsthand testimony of the nature and scope of Defendants' infringement as the evidence that these non-party witnesses will offer. It is not clear what insight employees who serviced Defendants accounts before Defendants terminated their agreements with Plaintiff could offer about

---

[1]Defendants cite confidentiality and privacy issues which preclude the naming of clients/patients at this stage of the litigation but which can be addressed as the case proceeds forward.

Order 8

Defendants infringing conduct that occurred <u>after</u> Defendants' agreements terminated. All activity that took place after the agreements terminated took place in the transferee districts. Financial records of Defendants' revenue during the time of infringement are located in the transferee district. In short, the proof that Plaintiff needs to present evidence of Defendants' gross revenue under 17 U.S.C. § 504(b) is located in Defendants' respective districts.

Even assuming that Plaintiff's non-party witnesses had relevant information to offer, the number of Plaintiff's witnesses located in this district are substantially fewer than the witnesses Defendants would need to defendant against the indirect and direct copyright damages claim Plaintiff's plan to advance. I find a greater inconvenience to the Defense access to proof by retaining venue in Oregon. See e.g., In re Hoffmann-La Roche Inc., 2009 WL 4281965 (Fed.Cir. Dec. 2, 2009)(holding that in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer).

In short, the record establishes that all the witnesses Defendants' need to defend against the copyright damages claims are located in North Carolina, Texas, or Kansas. In re Volkswagen of Am., Inc., 545 F.3d 304 (5th Cir. 2008)(en banc)(issuing mandamus to transfer a case out of the Eastern District of Texas where no identified witnesses or evidence was located in that district); see also, Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F.Supp.2d 325, 330 (E.D.N.Y. 2006)(noting that in patent infringement cases the bulk of relevant evidence generally comes from the accused infringer; thus the place where defendant's documents are kept weighs in favor of transfer to that location). I disagree with Plaintiff's assertion that these witnesses are not central to the case and will be "of tertiary importance in deciding damages issues...." (Doc. 60, p. 8.) Indeed, these witnesses will be central

Order 9

to Defendants proving that their profits are attributable to factors other than Plaintiff's copyrighted materials. Frank Music Corp., 772 F.2d at 514. Keeping these cases in this district would effectively hamstring Defendants' defense against the copyright infringement damages by severely hampering their access to their proof. I find that the inconvenience Defendants would face in defending the infringement damages claims in Oregon far outweighs any inconvenience Plaintiff may face in litigating its contract and copyright infringement claims in the transferee venues. In sum, in all three cases I find that the factor of access to proof weighs in favor of transferring venue.

The availability of compulsory process for securing attendance of unwilling witnesses and the cost of obtaining willing witnesses are also important factors in the transfer calculus. Deaker Coal, 805 F.3d at 843. Under Fed. R. Civ. P. 45(b)(2), in order for a subpoena to be valid, it must fall within this court's subpoena power. As noted above, most relevant witnesses to the copyright damages issue are in North Carolina, Kansas, or Texas. This court could not compel those witnesses to appear; however the transferee jurisdictions could. Although I am informed that Plaintiff apparently plans to use five non-party witnesses to testify about the nature and scope of Defendants' infringement, the relevance of these witnesses testimony is not clear. (Doc. 60, p. 9.) Evidence of Defendants' gross revenue during the time of the infringement is located in the transferee districts. Plaintiff's former employees who live in Oregon or Washington do not have knowledge of this income which was generated after termination of the agreements between Plaintiff and Defendants. It is true, however, that these witnesses would not be subject to subpoena by the transferee court.

If these cases remained in this district, the court will have valid subpoena power over these five witnesses who, based on the current record, do not appear to have information regarding Defendants' revenue during the time of infringement. This district will not, however, have subpoena power over

Order 10

the large number of witnesses Defendants will need to call to defend against the indirect and direct copyright infringement damages. Although those witnesses have not been identified by Defendants, it is clear from the record that the witnesses will have relevant information regarding whether their decision to use Defendants' services resulted from an infringing advertisement, a referral from someone who had seen an infringing advertisement, or from some other source not attributable to the infringing advertisement. In contrast, if these cases are transferred, the transferee courts will have valid subpoena power over most witnesses, except for Plaintiff's five potential witnesses.

The cost of obtaining witnesses is also greater for Defendants. The distance each of Defendants' witnesses would have to travel is at least 1,500 miles. Far distances from home means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time increases the time witnesses must be away from family and employment obligations. In re Volkswagen of America, 545 F.3d at 317. It is true that Plaintiff's five potential witnesses would also have to travel at least 1,500 if I transfer these cases. Plaintiff, however, has far fewer witnesses than Defendants will have and the relevance of Plaintiff's proposed witnesses' testimony appears from the record at this time to be less relevant to the infringement issue than that of Defendants' potential witnesses.

I find that the inability of this court to issue valid subpoenas for Defendants' witnesses and the cost of Defendants' witness travel to Oregon clearly favors transferring these cases.

The final factor is a catch all factor requiring the court to weigh all other factors that render the trial of the case expeditious and inexpensive. As noted, due to the location of the witnesses and access to proof such as records in the Defendants' respective districts, transfer would both expedite and lower the cost of the trials. It is true that counsel (and their staff) for both Defendants and Plaintiff would

Order 11

have to travel from Portland, Oregon to the new locale, but both counsel would have had to travel to Eugene for trial if the case remained in this district. I am mindful that Plaintiff's five witnesses would be required to travel and be provided lodging and food. It is also true that Plaintiff's representative would have to travel to the transferee venues, but I note that Plaintiff solicited the Defendants business by contacting them in Kansas, Texas, and North Carolina and such travel is simply a cost of doing business across the country.

I am mindful of Plaintiff's assertion that the choice of forum clause should protect it from the burden of litigating in other venues. I note these three cases are not the only breach of contract and copyright infringement claims Plaintiff has brought in this district. Plaintiff solicits business on a national scale and designates Oregon as the forum for any contract dispute in its membership and licensing agreement. The Court's examination of Plaintiff's filings in the District of Oregon reveals that Plaintiff has filed twelve[2] such actions in the District of Oregon since 2002 in which a breach of contract claim was joined with a copyright claim. The Defendants in each of the cases were residents of states other than Oregon. At oral argument, Plaintiff's counsel conceded that the forum selection clause does not encompass the copyright claims. While it is undoubtedly more convenient for Plaintiff to litigate these actions in the district where Plaintiff resides, the forum selection clause, while pertinent to the contract claims, has no application to the copyright claim. As is evident from these three cases before this Court, allowing the relatively small contract claim to decide where the much larger copyright infringement claims will be litigated will thwart Congress's intent in enacting venue

---

[2]Plaintiff has filed nineteen cases since 2002. Twelve cases were breach of contract claims joined with a copyright claim. Three cases were copyright claims only. The Court was unable to determine whether the remaining case included a breach of contract claim as well as a copyright claim because the case documents were unavailable for viewing on CM/ECF as they were conventionally filed and the physical file had been archived.

Order 12

limitations, which was to insure that all defendants have a fair location for trial, free from inconvenient litigation. Johnson Creative Arts v. Wool Masters, 743 F.2d 947, 955 (1st Cir. 1984). Including the copyright claims under the jurisdictional umbrella of the contract claims makes it unreasonably difficult for all Defendants to defend themselves, potentially having the effect of forcing Defendants to settle rather than face the burden of a trial without access to their proof of damages. Accordingly, I give little weight to Plaintiff's forum selection for its smaller breach of contract claim.

I find that the private-interest factors weigh heavily in favor of transferring venue.

I must next weigh the relevant public-interest factors. I afford the factors of the administrative difficulties flowing from court congestion and the avoidance of unnecessary problems in conflicts of law no weight in this section 1404(a) analysis because they are neutral on the record.

I find that the factor of unfairness of jury duty on the people of a community having no relation to litigation and the factor of local interest in having local controversies decided at home both weigh in favor of transferring venue in all three cases. This district has little local interest in these breach of contract claims and copyright disputes. A review of each of the complaints reveals that the Defendants' respective districts have more significant contacts to the controversy. Plaintiff contacted each Defendant in the Defendants' respective district. Plaintiff conceded at oral argument that none of the infringing activity occurred in Oregon. The Defendants used the materials in their respective districts, and clients and patients responded to the materials in the Defendants' respective districts. Indeed, any trial on the infringement claim will involve examining and testing consumer reaction–in Defendants' respective districts, to the copyrighted and allegedly infringing materials. A jury in this district would be hearing about seminars and materials distributed in Kansas, North Carolina, or Texas. In contrast if these cases were transferred to Defendants' respective venues, the jurors would be

Order 13

reviewing events that occurred in the locality in which the jurors live. The factor of local interest weighs in favor of transfer to Defendants' respective districts.

Finally, I must consider the governing law. Here, the largest portion of the three cases involves Plaintiff's copyright infringement claim which is a federal statute. It is true that if these cases are transferred to the Defendants' respective districts, the federal judges in those districts will have to apply Oregon's contract law on the breach of contract claim. It is undisputed that this district is more familiar with Oregon contract law. I note however, that Oregon's contract law is not especially complicated. Moreover, the bulk of the evidentiary and factual issues in this case flow from the copyright claims. I am confident that the application of Oregon law will not prove elusive or burdensome for my fellow judges in Texas, North Carolina, and Kansas.

## Conclusion

I find that both the private and public factors weigh in favor of transfer. Thus, "[f]or the convenience of the parties and witnesses, in the interest of justice, " these cases should be transferred to the Defendants' respective district.

I grant Defendant Diederich's Motion to Transfer Venue. (Doc. 45.) The First Amended Complaint against Diederich shall be transferred to the United States District Court for the District of Kansas

I grant Defendant Wong's Motion to Transfer Venue. (Doc. 48.) The First Amended Complaint against Wong shall be transferred to the United States District Court for the Western District of Texas.

I grant Defendants NCEENT and Young's Motion to Transfer Venue. (Doc. 8.) The First Amended Complaint against NCEENT and Young shall be transferred to the United States District Court for the Middle District of North Carolina.

Order 14

The Clerk of the Court is directed to file a copy of this order in each of the three above captioned cases.

IT IS SO ORDERED

DATED this  5th  day of January 2009.

                                                                       THOMAS M. COFFIN
                                                                       United States Magistrate Judge

Order 15